UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NICHOLAS P. CHAHALES,

                Plaintiff,                **MEMORANDUM and ORDER**

       -against-                                04-CV-4268 (SLT)

THE CITY OF NEW YORK, and the
NEW YORK CITY DEPARTMENT
OF ENVIRONMENTAL PROTECTION, and
THE NEW YORK CITY CONFLICTS OF
INTEREST BOARD and ROBERT RAVALLO,

                Defendants.
------------------------------------------------------------------x

**TOWNES, United States District Judge:**

      Plaintiff, Nicholas P. Chahales, who is an employee of defendant New York City Department of Environmental Protection ("DEP"), brings this action pursuant to 42 U.S.C. § 1983 and the New York State Constitution, alleging that defendants violated his constitutional rights to free speech, equal protection and due process by denying him permission to run for elective office without taking a leave of absence. Defendants now move pursuant to Fed.R.Civ. P. 12(b)(6) to dismiss plaintiff's complaint, principally on the ground that plaintiff's § 1983 claims are barred by the statute of limitations. For the reasons set forth below, defendants' motion is granted and this action is dismissed.

## BACKGROUND

      The following facts are drawn from plaintiff's complaint, the truth of which is assumed for purposes of this motion to dismiss. Plaintiff has been employed by the DEP as a Principal Administrative Associate since July 2001. Complaint at ¶ 2. At all times relevant to this action, plaintiff was assigned to the Bureau of Water Supply in Valhalla, NewYork, under the supervision of defendant Robert Ravallo, a Project Manager. *Id.* at ¶¶ 2-3.

      At some unspecified point in or before 2001, plaintiff, who resides in Mahopac, New

York, decided to run for the Putnam County Legislature. Plaintiff was aware that New York City Mayoral Directive No. 91-7 ("Directive 97-1") required "city department heads . . . to avoid possible conflict[s] of interest or appearances of impropriety by requiring a leave of absence for City Employees running for elective office." *Id.* at ¶ 15. However, plaintiff was also aware that "department heads were given latitude to grant exemptions or waivers" under certain circumstances. *Id.*[1]

Sometime in 2001 – shortly after being hired by the DEP – plaintiff sought an exemption under Directive 97-1. *Id.* at ¶ 22. According to plaintiff's complaint, Ravallo "immediately" denied plaintiff's request for an exemption "without any consideration of the latitude given to him to grant waivers by Mayoral Directive No. 91-7," and told plaintiff to "take a leave of absence or lose his job." *Id.* Plaintiff alleges that he did not receive a ruling on his application from either the Mayor of New York City or defendant New York Conflict of Interest Board ("the

---

[1]This Court will take judicial notice that Directive 97-1 provides:

> [A] candidate for elective office may be exempted from the requirement to take a leave of absence if: (a) the head of the agency in which such employee works determines that such employee's taking a leave during the period of his or her candidacy will not be in the best interest of the agency; and (b) the Mayor or the Mayor's designee, upon the recommendation of the Corporation Counsel and the City Personnel Director, determines that, in view of the nature of the elective office for which the employee is a candidate and the nature of the city position he or she holds, there is not a substantial likelihood of an appearance of impropriety arising from the employee's involvement in matters at issue in the election if such employee continues on active duty during the period of his or her candidacy.

2

CIB"). *Id.* at ¶ 23.[2]

Plaintiff elected to take an unpaid leave of absence and to run for office. He "lost the primary and dropped out as a candidate in early September" 2001. *Id.* at ¶ 24. Nonetheless, Ravallo told plaintiff that he could not return to work until after the general election in November 2001. *Id.* Plaintiff alleges that, since Directive 91-7 requires that an employee remain on leave only during the period that he or she is a candidate, Ravallo's refusal to permit plaintiff to return in September "was clearly an abuse of power and vindictive in nature, meant solely to serve as punishment and harassment for [plaintiff] having dared to exercise his Constitutional rights." *Id.*

On October 1, 2004, plaintiff commenced the instant action, alleging that defendants violated his federal and state constitutional rights. Plaintiff's first, third and fifth causes of action are brought pursuant to 42 U.S.C. § 1983, and allege violation of plaintiff's federal constitutional rights to free speech, equal protection and due process, respectively. The second, fourth and sixth causes of action allege violation of the same rights under the New York State Constitution. For each cause of action, plaintiff seeks compensatory and punitive damages of unspecified amounts, as well as declaratory relief. In addition, plaintiff seeks reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988.

In support of plaintiff's equal protection claim, the complaint alleges that Ravallo himself received exemptions or waivers under Directive 91-7. According to plaintiff's complaint, Ravallo "sought and received a waiver to run for Town Councilman in Carmel, New York in

---

[2]Plaintiff does not allege that he ever requested an exemption directly from the Mayor or CIB. However, even if he had, Directive 97-1 indicates that an application for an exemption should first be addressed to the head of the applicant's agency, and will be considered by the Mayor only after the agency head recommends granting the application.

3

1997 [and] . . . has sought and received a waiver to run for said office numerous times since," most recently in July 2003. *Id.* at ¶ 16. Despite the obvious differences in the positions of the newly hired plaintiff and his supervisor, plaintiff implies that he and Ravallo are similarly situated and that the summary denial of his request for an exemption was "glaringly unequal to the preferential treatment afforded . . . Ravallo." *Id.* at ¶ 23.

Defendants now move to dismiss this complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing (1) that plaintiff's § 1983 claims are barred by the statute of limitations; (2) that plaintiff's allegations against the City of New York and the CIB are insufficient to make out municipality liability and (3) that plaintiff's State constitutional claims are time-barred because plaintiff has failed to comply with applicable notice of claim requirements. Defendants also argue, in the alternative, that if this Court dismisses plaintiff's § 1983 claims, it should decline to exercise jurisdiction over plaintiff's State constitutional claims.

In response to defendants' first argument, plaintiff argues only that plaintiff's claims are timely pursuant to the "continuing violation doctrine." Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp. Memo"), at 2.[3] However, plaintiff does not allege a pattern of discriminatory acts against himself alone, but rather alleges that "[t]he clear practice of preferential and discriminatory behavior *favoring* Ravallo over Chahales allows the application of the continuous (sic) violation doctrine." *Id.* at 5 (emphasis added). Plaintiff therefore claims that the latest discriminatory action took place in 2003 – the most recent occasion on which Ravallo was granted an exemption under Directive 91-7. *Id.*

---

[3]This document is not paginated. This Court has calculated page numbers by numbering the pages sequentially, ignoring the title page and starting with the first page on which the substantive text begins.

4

**DISCUSSION**

The Rule 12(b)(6) Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all of the factual allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See*, *e.g.*, *Board of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002), *cert. denied*, 537 U.S. 1227 (2003); *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). A court "may not dismiss a complaint unless 'it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle [the plaintiff] to relief.'" *Jaghory*, 131 F.3d at 329 (quoting *Hoover v. Ronwin*, 466 U.S. 558, 587 (1984) (Stevens, J., disssenting)).

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), *cert. denied*, 503 U.S. 960 (1992), only certain matters outside of the four corners of plaintiff's pleading may be considered in assessing the complaint's sufficiency. As the Second Circuit has stated:

> When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff's [pleading] . . ., to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit.

*Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec*, 949 F.2d at 47-48). The Second Circuit has emphasized that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of

5

the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original). If material other than that listed by the *Brass* Court "is presented to and not excluded by the court, 'the motion shall be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion . . . .'" *Id.* (quoting Fed.R.Civ. P. 12(b)).

In this case, defendants have included in their motion papers materials outside the four corners of the complaint. Specifically, defendants have submitted (1) a copy of Directive 97-1; (2) a letter dated July 2, 2001, in which Kerry John Katsorhis, Esq. – an attorney representing plaintiff – requests that Dr. Michael Principe, DEP Deputy Commissioner and Director of the Bureau of Water Supply's Division of Operations and Engineering, grant plaintiff an exemption from Directive 97-1; (3) a July 12, 2001, letter from DEP Deputy Commissioner Louis Tazzi to Mr. Katsorhis, denying the request for an exemption but granting plaintiff an unpaid personal leave of absence; and (4) a copy of a Notice of Claim filed with the City's Comptroller in September 2003. *See* Declaration of Assistant Corp. Counsel Rippi Gill ("Gill Declaration"), Exs. A-D. Defendants assert that this Court may consider all of these documents because they "are incorporated by reference in plaintiff's complaint." Memorandum of Law in Support of Defendants' Motion to Dismiss at 2, n.3.

Although this Court can doubtless take judicial notice of the text of Directive 97-1,[4] this Court does not find that any of the other documents have been "incorporated by reference." Plaintiff's complaint makes no mention whatsoever of plaintiff's counsel's July 2, 2001, letter to

---

[4] A court may take judicial notice of a fact which is "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

6

Dr. Principe, or of the reply plaintiff's counsel received to that letter. To the contrary, the complaint alleges that plaintiff addressed his exemption request to Ravallo, who "immediately" denied plaintiff's request for a waiver "without any consideration of the latitude given to him to grant waivers by Mayoral Directive No. 91-7." Complaint at ¶ 22. Moreover, while the complaint states that plaintiff did not receive a ruling on his application from either the Mayor of New York City or the CIB, *id.* at ¶ 23, the complaint does not suggest that plaintiff ever made an application to these parties or to anyone else. The complaint also makes no mention of plaintiff's administrative claim to the Comptroller of the City of New York.

However, rather than treat this motion as one for summary judgment and further delay the proceedings herein, this Court elects to exclude and disregard all of the exhibits to the Gill Declaration. None of these exhibits are necessary in order to decide the timeliness of plaintiff's § 1983 claims or any other issue discussed below.

The Timeliness of Plaintiff's § 1983 Claims

The statute of limitations for actions under §1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits. *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). Since Section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for actions brought in this Court pursuant to §1983 is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Paige v. Police Dept. of City of Schenectady*, 264 F.3d 197, 199, n.2 (2d Cir. 2001). The date on which an action accrues is governed by federal law, *see Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997), which provides that an action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002),

*cert. denied*, 538 U.S. 922 (2003); *see also Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980) ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.")

Although plaintiff's complaint alleges that the action did not accrue until July 12, 2003 – the most recent occasion on which Ravallo was granted exemptions under Directive 97-1 – plaintiff's action accrued when he was denied an exemption from the requirements of Directive 91-7. In determining the date on which actions accrue, "the proper focus is on the time of the [allegedly unlawful] act." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994), *cert. denied*, 516 U.S. 808 (1995). Plaintiff knew, or should have known, of the alleged violations of his free speech and due process rights as soon as his application for an exemption was denied. Plaintiff's discovery of the "favorable" treatment allegedly afforded Ravallo is relevant solely to plaintiff's equal protection claim. Moreover, as the complaint itself notes, Ravallo had been granted exemptions as early as 1997. Complaint at ¶ 16. Therefore, even assuming that plaintiff's equal protection argument is dependent on the DEP's granting of Ravallo's applications, plaintiff could, through the exercise of due diligence, have discovered a basis for his equal protection claim well before July 12, 2003.

Plaintiff's complaint does not allege the exact date on which Ravallo denied plaintiff's application for an exemption or plaintiff's request to return to work following his defeat in the primary. However, Ravallo's denial of plaintiff's exemption request must have preceded plaintiff's September 2001 defeat, and plaintiff's request to return to work presumably occurred shortly after this defeat. Indeed, by relying exclusively on the continuing violation doctrine in his response to defendants' motion to dismiss, plaintiff tacitly concedes that Ravallo's actions occurred more than three years prior to the commencement of this action.

Continuing Violation Doctrine

The timeliness of plaintiff's § 1983 claims, therefore, depends on whether the "continuing violation doctrine" applies to this case. This doctrine "allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period." *Pollis v. New School for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997) (citing *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968)). This doctrine arose from Title VII actions, and is usually applied in cases involving specific discriminatory employment policies or mechanisms, "such as discriminatory seniority lists . . . or discriminatory employment tests." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052 (1994). However, the Second Circuit has applied the doctrine in cases brought pursuant to § 1983. *See Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). Nonetheless, "courts in the Second Circuit have viewed continuing violation arguments with disfavor," *Garland-Sash v. City of New York*, No. 04-CV-301 (NGG), 2005 WL 2133592, at *4 (E.D.N.Y. Sept. 1, 2005) (citing *Curtis v. Airborne Freight Corp.*, 87 F.Supp.2d 234, 244 (S.D.N.Y. 2000)), and "only 'compelling circumstances will warrant application of the exception to the statute of limitations.'" *Quadrozzi Concrete Corp. v. City of New York*, No. 03 Civ. 1905 (LAP), 2004 WL 2222164, at *8 (S.D.N.Y. Sept. 30, 2004) (quoting *McMillan v. City of New York*, No. 95 Civ. 5459, 1997 U.S. Dist. LEXIS 14312 (S.D.N.Y. Sept. 19, 1997), *aff'd*, No. 97-9261, 1998 U.S. App. LEXIS 12949 (2d Cir. May 29, 1998)).

"In order to assert a continuing violation, a plaintiff must establish both (1) a policy or practice which caused the alleged discrimination, and (2) that the timely claim is continuous in time with the untimely claims." *Plumey v. New York State*, 389 F.Supp.2d 491, 498 (S.D.N.Y. 2005) (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998)). With

9

respect to the first element, "[t]he law is clear that the continuing violation exception applies only where there are 'specific' or 'identifiable' discriminatory customs or practices, or specific and related acts that are tantamount to such customs or policies." *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 82-83 (2d Cir. 2001). In other words, "what must be alleged to withstand dismissal on the pleadings . . . is a discriminatory policy or practice, not the undertaking to come up with one." *Id.* at 83. A complaint which alleges only "discrete discriminatory acts" is insufficient to invoke the continuing violations doctrine; such acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The complaint in this case does not allege a discriminatory policy or practice. In fact, it is not even clear whether it alleges more than two discrete act: Ravallo's refusal to grant petitioner an exemption under Directive 97-1 and his refusal to permit plaintiff to return to work in September 2001. Although plaintiff now suggests that the instances in which DEP granted Ravallo an exemption are other discrete discriminatory acts, which form a pattern of discrimination, this Court cannot consider these acts in deciding whether to apply the continuing violation doctrine. The Second Circuit has expressly held that "the continuing violation doctrine . . . implicate[s] only those acts directly affecting plaintiffs." *Washington v. County of Rockland*, 373 F.3d 310, 318 n.3 (2d Cir. 2004). Despite plaintiff's attempts to characterize the decisions to grant Ravallo exemptions as "discriminatory behavior favoring Ravallo over [plaintiff]," Opp. Memo at 5, the decisions regarding Ravallo's applications did not affect plaintiff and had nothing whatsoever to do with plaintiff's 2001 application.

Moreover, even if plaintiff's complaint adequately alleged a discriminatory custom, policy or practice, plaintiff could not make out the second element of a continuing violation:

"that the timely claim is continuous in time with the untimely claims." *Plumey*, 389 F.Supp.2d at 498. The Second Circuit has stated that, "[a]bsent unusual circumstances, a two-year gap [between discriminatory acts] is a discontinuity that defeats use of the continuing violation exception." *Weeks*, 273 F.3d at 84. Thus, even if the DEP's 2003 approval of Ravallo's application could be considered a discriminatory act affecting plaintiff, this act was not "continuous in time" with the DEP's 2001 rejection of plaintiff's application.

Since plaintiff has not made out either of the elements of a continuing violation, plaintiff's § 1983 claims are time-barred. Plaintiff's first, third and fifth causes of action are, therefore, dismissed.[5]

Pendant State Claims

Plaintiff's remaining causes of action are State law claims. Under 28 U.S.C. § 1367(c)(3) a district court, in its discretion, may "decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 103 (2d Cir. 1998). In exercising its discretion, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* While the foregoing does not establish a mandatory rule, it recognizes that in the usual case in which all federal-law claims are eliminated before

---

[5]Because this Court concludes that plaintiff's § 1983 claims are untimely, it does not reach defendants' argument concerning municipal liability.

trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims. *Id.* at 350, n. 7.

This Court has carefully considered the factors list in *Cohill*. This case is still in the early stages; the parties have not had an initial conference and the docket sheet does not reflect that any discovery has yet taken place. Moreover, the remaining claims do not merely allege violations of State law, but violations of the New York State Constitution. Since the balance of factors point toward declining to exercise jurisdiction over the remaining claims, *id.*, this Court declines, in its discretion, to exercise jurisdiction over these pendant State claims. Accordingly, the second, fourth and sixth causes of action are dismissed without prejudice.

## CONCLUSION

For the reasons stated above, plaintiff's § 1983 claims are dismissed as time-barred, and plaintiff's remaining State law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367 (c)(3). The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and to close this case.

**SO ORDERED.**

                                               S/
                                   SANDRA L. TOWNES
                                   United States District Judge

Dated: Brooklyn, New York
       March 10, 2006